## S10A1821. BODDIE v. DANIELS.

(702 SE2d 172)

CARLEY, Presiding Justice.

In March 2007, a petition for temporary letters of guardianship for the minor daughter of Tammie Boddie (Mother) was filed in the probate court by Yolanda Daniels (Guardian). Attached to the petition was a notarized written consent signed by Mother. See OCGA § 29-2-6 (a). Temporary letters of guardianship were issued in April 2007. In March 2009, Mother filed a petition to terminate the temporary guardianship, Guardian filed a timely objection, and the records were transferred "to the juvenile court, which shall determine, after notice and hearing, whether a continuation or termination of the temporary guardianship is in the best interest of the minor." OCGA § 29-2-8 (b). Mother challenged this "best interest" standard in writing as violative of her constitutional rights. Compare *In the Interest of J. R. R.*, 281 Ga. 662, 663 (641 SE2d 526) (2007). After a hearing, the juvenile court rejected that challenge and

found by a preponderance of the evidence that the best interests of the child will be served by continuing the temporary guardianship. The juvenile court denied the request to terminate the guardianship without making any finding that such termination would harm the child. Mother appeals from this order.

Mother contends that OCGA § 29-2-8 (b) does not contain sufficient safeguards to protect her fundamental constitutional right to raise her child and that its "best interest" standard should therefore be construed narrowly as in *Clark v. Wade*, 273 Ga. 587 (544 SE2d 99) (2001). In *Clark*, this Court upheld that standard as constitutional when narrowly construed and "applied to custody disputes between a biological parent and custodial third party under OCGA § 19-7-1 (b.1)." *Clark v. Wade*, supra at 588. Such disputes do not implicate a parent's constitutional rights any more than does the present dispute between a biological parent and a third-party temporary guardian over continuation of the guardianship, since guardianships have at least as great a potential to interfere with parental rights as do awards of custody.

Except with respect to receiving personal property of the minor without becoming her legally qualified conservator, "a temporary guardian shall be entitled to exercise any of the powers of a natural guardian." OCGA § 29-2-7 (a). See also OCGA § 29-3-1 (d); Jennifer L. Roberts & William J. Self, II, *Ga. Guardian and Ward* § 2:7 (2009-2010 ed.). "The implication of this provision . . . is that guardians of a minor have the powers . . . otherwise inherent in parenthood." *In the Matter of Guardianship of Doe*, 4 P3d 508, 516 (VI) (Haw. 2000). As a result of these broad powers, "[c]ustody, even permanent custody, with its attendant responsibilities, is but an incident of guardianship. Consequently, appointment of a guardian supercedes that of a custodian since the latter is contained within the former. [Cit.]" *In the Matter of Bunting*, 311 A2d 855, 857 (Del. 1973). See also 39 CJS *Guardian and Ward* § 2.

> "There are significant similarities between 'custody' and 'guardianship.' . . . A guardian has the broadest range of the rights and duties of caring for a child, but the right to custody of the child is certainly the principal attribute of guardianship of the person. For practical purposes, however, guardianship and custody are very similar concepts. Both carry with them the privileges and obligations of decision-making and the daily care of the child; the custody decision and the guardianship decision both determine the primary residence of the child." (Emphasis omitted.) [Cit.] Because these concepts share common attributes, we construe the . . . guardianship provision . . . and the custody provision . . .

in pari materia in order to determine the appropriate standard to be applied where conflicting claims between parents and non-parents are made in a guardianship hearing. [Cit.]

*In the Matter of Guardianship of Doe*, supra at 516-517 (VI).

Consistent with the common attributes of custody and guardianship, those courts which apply certain principles and safeguards in the context of custody disputes between a biological parent and a third party due to constitutional concerns apply those same principles and safeguards to a parent's effort to regain custody by terminating a guardianship. *In re Guardianship of D. J.*, 682 NW2d 238, 246 (Neb. 2004); *In the Matter of Guardianship of Williams*, 869 P2d 661, 670 (Kan. 1994). See also *Guardianship of Jeremiah T.*, 976 A2d 955, 962-963 (II) (B) (Me. 2009); *In the Interest of SRB-M*, 201 P3d 1115, 1119-1120 (Wyo. 2009). Therefore, we conclude that the construction of the "best interest" standard in *Clark* is controlling in this case.

Although there was no majority opinion in *Clark*, the plurality opinion clearly represented the views of a majority of Justices on several points. Where, as here, a third party seeks neither to terminate parental rights nor to break up a natural family by removing the child from her biological parent's custody, "federal constitutional law does not require a showing that the parent is unfit before custody may be awarded to [the] third party. [Cit.]" *Clark v. Wade*, supra at 595 (III). See also *Clark v. Wade*, supra at 600 (Sears, J., concurring specially); *Clark v. Wade*, supra at 601-606 (Hunstein, J., concurring specially) (concluding that OCGA § 19-7-1 (b.1) is constitutional as written and that the plurality's narrowing construction is not constitutionally required). Compare *Quilloin v. Walcott*, 434 U. S. 246, 255 (II) (A) (98 SC 549, 54 LE2d 511) (1978) (expressing "little doubt" that the right to due process would be violated if " 'a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest' "). The Supreme Court of the United States has not issued any decision since *Clark* placing that conclusion in doubt.

However, where, as here, a custody dispute arises between a noncustodial biological parent and a third party, a strong majority of Justices in *Clark* would not permit the state to interfere with the parent's right to raise her child unless, at a minimum, "the state acts to protect the child's health or welfare and the parent's decision would result in harm to the child. [Cit.]" *Clark v. Wade*, supra at 597 (IV). See also *Clark v. Wade*, supra at 606-608 (Thompson, J.,

dissenting) (where three Justices also opined that the parent could not be deprived of custody absent a showing of parental unfitness). Thus, in the two cases considered in *Clark*, the judgments of the trial courts were reversed and the cases remanded for application of the custody statute under a narrow construction of the "best interest" standard that came within these constitutional parameters. Accordingly, that standard as found in OCGA § 29-2-8 (b) must be interpreted

> to mean that the third party must prove by clear and convincing evidence that the child will suffer physical or emotional harm if custody were awarded to the biological parent [by terminating the temporary guardianship]. Once this showing is made, the third party must then show that [continuation of the temporary guardianship] will best promote the child's welfare and happiness.

*Clark v. Wade*, supra at 599 (V). With that narrowing construction, we uphold the "best interest" standard in OCGA § 29-2-8 (b) as constitutional. Therefore, the juvenile court erred by denying the petition to terminate the temporary guardianship without finding by clear and convincing evidence that such termination would harm the child.

"By harm, we mean either physical harm or significant, long-term emotional harm; we do not mean merely social or economic disadvantages. [Cits.]" *Clark v. Wade*, supra at 598 (IV). In applying this rigorous harm standard so as to ensure that the temporary guardianship will be continued only when a real threat of harm would result from termination, the trial court must consider the factors set forth in *Clark v. Wade*, supra at 598-599 (IV). See also *Clark v. Wade*, supra at 600 (Sears, J., concurring specially). We further "note that the death of a parent, divorce, or a change in home and school will often be difficult for a child, but some level of stress and discomfort may be warranted when the goal is reunification of the child with the parent." *Clark v. Wade*, supra at 598 (IV).

> "(G)uardianships are intended to encourage parents experiencing difficulties to temporarily turn over the custody and care of their children — safe in the knowledge that they will be able to regain custody in the future. This policy would be frustrated if guardianships were [difficult to terminate and constitutional parental rights were not protected], because parents would be less likely to voluntarily petition for a guardian to be appointed to care for their

minor children. Therefore, children would unnecessarily be placed in jeopardy in many circumstances." [Cit.]

*In the Interest of SRB-M*, supra at 1120 (quoting *In re Guardianship of D. J.*, supra).

Accordingly, we reverse the judgment of the juvenile court and remand this case to that court for further proceedings not inconsistent with this opinion.

*Judgment reversed and case remanded with direction. All the Justices concur.*

DECIDED NOVEMBER 1, 2010.

*Deborah A. Johnson, Rachel M. Lazarus, David A. Webster*, for appellant.

*Berk & Moss, Stephen J. Berk, Ronke A. Williams*, for appellee.