### A11A1794. LOPEZ v. OLSON et al.
(724 SE2d 837)

ANDREWS, Judge.

Erin Olson Lopez, the mother of two minor children, appeals from the final judgment of the Superior Court of Columbia County (the Georgia Court) entered pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (OCGA § 19-9-40 et seq.), modifying a prior child custody determination made by the

534

Superior Court, Fourth Judicial District, Fairbanks, Alaska (the Alaska court). In the same order, the Georgia court also granted a legitimation petition brought by the father of one of the children, but Lopez does not enumerate error with respect to this portion of the court's order. For the following reasons, we vacate the Georgia court's judgment as to custody and remand for further consideration. We affirm the portion of the judgment granting the legitimation petition.

1. Lopez claims that the Georgia court lacked subject-matter jurisdiction under the UCCJEA to modify the prior custody determination made by the Alaska court, which awarded legal and primary physical custody of her two children to the children's maternal grandparents, Ricky James Olson and Lottie Grace Olson, and granted visitation rights to Lopez.

In 2005, Lopez moved from Georgia to Alaska with her two minor children Evan, born April 2, 2004, and Kyle, born March 12, 2005. Lopez moved to Alaska with the Olsons (her mother and adoptive father), who were transferred to Alaska from Georgia in 2005 pursuant to Mr. Olson's military service. In 2007, while Lopez and the children were living with the Olsons in Alaska, Lopez entered into a written agreement with the Olsons to give custody of her two children to the Olsons. The agreement was the basis for an order entered by the Alaska court awarding legal and primary physical custody of the children to the Olsons. Lopez acknowledged in the Alaska court that Michael Diaz was the father of Kyle, and the court entered a default judgment against Diaz as to custody of Kyle. Although Lopez knew during the Alaska court proceedings that Gregory Criste was Evan's father, this fact was not revealed to Criste or to the court; Criste was not a party to the proceedings in the Alaska court; and the Alaska court entered a default judgment as to custody of Evan against a John Doe defendant named as Evan's father. In July 2009, the Olsons moved back to Columbia County, Georgia pursuant to another military service transfer, where they and the two children in their custody have resided since that time. Lopez also moved back to Georgia in July 2009, but in September 2009, Lopez moved to Texas to live with her biological father where she has resided since that time.

After learning that he was the father of Evan, Criste, a Georgia resident, filed a petition in February 2010 in the Georgia court seeking to legitimate Evan and to modify the Alaska court custody determination by obtaining visitation with the child. On March 29, 2010, Lopez[1] filed a pro se appearance in the Georgia court contest-

---

[1] Although Lopez was then known as Erin Olson, she is referred to throughout this

ing the jurisdiction of the court in the Criste petition; attaching copies of the custody orders entered by the Alaska court; and alleging that the Alaska court had jurisdiction. On March 31, 2010, the Alaska court entered another order giving Lopez specific rights to visitation with the children at her residence in Texas. On April 13, 2010, the Georgia court conducted a temporary hearing on the Criste petition attended by Criste, the Olsons, and Lopez. At the hearing, the Georgia court found that a custody order as to the children had been entered in the Alaska court in 2007; that a proceeding brought by Lopez in October 2009 seeking custody of the children was pending in the Alaska court; and that the Georgia court should confer with the Alaska court to determine which court was a more appropriate forum under the UCCJEA. OCGA § 19-9-66. On May 12, 2010, the Alaska court entered an interim order in Lopez's pending custody proceeding granting joint legal custody of the children to Lopez and the Olsons with temporary placement of the children with the Olsons. On May 17, 2010, the Olsons filed a petition in the Georgia court referencing Lopez's pending child custody proceeding in the Alaska court and asking the Georgia court to assume jurisdiction under the UCCJEA and modify the Alaska court's custody determination by terminating Lopez's visitation rights and awarding them legal and physical custody of Evan and Kyle subject to any visitation rights awarded to Criste with Evan.

On May 17, 2010, a telephone conference was conducted between the Georgia court and the Alaska court attended by the parties. Based on all the circumstances, including the fact that none of the parties resided in Alaska, the Alaska court determined pursuant to the UCCJEA that it no longer had exclusive continuing jurisdiction; that Georgia is the home state of the children; and that the Georgia court is the more appropriate forum. Based on the Alaska court's determination, the Georgia court assumed jurisdiction pursuant to OCGA § 19-9-63 of the UCCJEA and consolidated the petitions filed by the Olsons and Criste seeking to modify the prior Alaska court custody determination. Prior to commencement of trial, the Georgia court announced, and the parties agreed, that Lopez's claim for custody of the children made in the Alaska court would be tried as part of the trial on the consolidated petitions. The custody orders of the Alaska court were filed and made a part of the record in the Georgia court. After a trial at which Lopez appeared pro se, the Georgia court entered an order granting Criste's petition to legitimate Evan and modifying the prior custody determination of the Alaska court. As to Kyle, the Georgia court granted the Olsons

opinion by her current name.

and Lopez joint legal custody; granted the Olsons primary physical custody with the right to make all final decisions affecting the health, education, and welfare of the child; and granted Lopez specified visitation rights. As to Evan, the Georgia court granted joint legal custody to the Olsons, Lopez, and Criste; granted the Olsons primary physical custody with the right to make all final decisions affecting the health, education, and welfare of the child; and granted specified visitation rights to Lopez and Criste.

Lopez claims that the Georgia court lacked subject-matter jurisdiction to modify the Alaska court custody determination because the Alaska child custody determination was not registered pursuant to the requirements of the UCCJEA. Under "Part 3" of the UCCJEA captioned "Jurisdiction and Enforcement of Foreign Decrees," OCGA § 19-9-85 provides for registration, contesting, and confirmation of foreign custody determinations as follows:

> (a) A child custody determination issued by a court of another state may be registered in this state, with or without a simultaneous request for enforcement, by sending to the superior court in the appropriate venue in this state:
>
> (1) A letter or other document requesting registration;
>
> (2) Two copies, including one certified copy, of the determination sought to be registered, and a statement under penalty of perjury that to the best of the knowledge and belief of the person seeking registration the order has not been modified; and
>
> (3) Except as otherwise provided in Code Section 19-9-69, the name and address of the person seeking registration and any parent or person acting as a parent who has been awarded custody or visitation in the child custody determination sought to be registered.
>
> (b) On receipt of the documents required by subsection (a) of this Code section, the registering court shall:
>
> (1) Cause the determination to be filed as a foreign judgment, together with one copy of any accompanying documents and information, regardless of their form; and
>
> (2) Serve notice upon the persons named pursuant to paragraph (3) of subsection (a) of this Code section and provide them with an opportunity to contest the registration in accordance with this Code section.
>
> (c) The notice required by paragraph (2) of subsection (b) of this Code section must state that:
>
> (1) A registered determination is enforceable as of the

date of the registration in the same manner as a determination issued by a court of this state;

(2) A hearing to contest the validity of the registered determination must be requested within 20 days after service of notice; and

(3) Failure to contest the registration will result in confirmation of the child custody determination and preclude further contest of that determination with respect to any matter that could have been asserted.

(d) A person seeking to contest the validity of a registered order must request a hearing within 20 days after service of the notice. At that hearing, the court shall confirm the registered order unless the person contesting registration establishes that:

(1) The issuing court did not have jurisdiction under Part 2 of this article;

(2) The child custody determination sought to be registered has been vacated, stayed, or modified by a court having jurisdiction to do so under Part 2 of this article; or

(3) The person contesting registration was entitled to notice, but notice was not given in accordance with the standards of Code Section 19-9-47 in the proceedings before the court that issued the order for which registration is sought.

(e) If a timely request for a hearing to contest the validity of the registration is not made, the registration is confirmed as a matter of law, and the person requesting registration and all persons served must be notified of the confirmation.

(f) Confirmation of a registered order, whether by operation of law or after notice and hearing, precludes further contest of the order with respect to any matter that could have been asserted at the time of registration.

Also under "Part 3" of the UCCJEA, OCGA § 19-9-86 further provides for granting relief and enforcing registered custody determinations as follows:

(a) A court of this state may grant any relief normally available under the laws of this state to enforce a registered child custody determination made by a court of another state.

(b) A court of this state shall recognize and enforce, but may not modify, except in accordance with Part 2 of this

article, a registered child custody determination of a court of another state.

"Jurisdiction of the subject matter does not mean simply jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which that particular case belongs." (Citation and punctuation omitted.) *Abushmais v. Erby*, 282 Ga. 619, 620 (652 SE2d 549) (2007). By asserting that there was a failure to comply with the registration requirements of OCGA § 19-9-85, Lopez has no claim that the Georgia court lacked subject-matter jurisdiction; rather we recognize her claim as a nonjurisdictional claim that the Georgia court had no authority in this case to modify the Alaska court determination because statutory prerequisites were not satisfied. See *Sanchez v. Walker County Dept. of Family &c. Svcs.*, 237 Ga. 406, 411 (229 SE2d 66) (1976) (considering failure to comply with mandatory statutory notice and hearing requirements). To enforce a custody determination made by another state, the other state's determination must be registered pursuant to OCGA § 19-9-85, which provides for notice of the registration to certain interested parties and an opportunity for those parties to contest the validity and enforcement of the foreign determination. OCGA § 19-9-86. As set forth in OCGA § 19-9-86 (b), a registered custody determination of another state shall be enforced by a Georgia court, but it "may not [be modified] except in accordance with Part 2 of this article." The consolidated petitions in this case did not seek to enforce the Alaska custody determination but to modify it pursuant to Part 2 of the UCCJEA. See OCGA § 19-9-63. Apart from her registration claim, Lopez does not claim that the Georgia court lacked authority under Part 2 to modify the Alaska court determination. We find under the plain language of OCGA §§ 19-9-85 and 19-9-86 that the UCCJEA does not require that a custody determination of another state be registered before it may be modified in accordance with Part 2. See *Ex parte Davis*, 82 So.3d 695, 701 (Ala. Civ. App. 2011) (construing similar provisions of the UCCJEA as adopted in Alabama).

2. We find no merit to Lopez's claim that the trial court erroneously took jurisdiction over and tried a pending Alaska case transferred to the Georgia court. The record reflects, not that the Georgia court tried a transferred Alaska case, but that the Georgia court properly assumed jurisdiction pursuant to OCGA § 19-9-63 to try proceedings filed in the Georgia court seeking to modify the Alaska court custody determination. The record was also sufficient to show that the issues raised by Lopez's petition filed in the Alaska court seeking custody of the children were tried in the Georgia court by express or implied agreement of the parties and the court. OCGA

§ 9-11-15 (b).

3. Lopez claims that the Georgia court erred by continuing custody of her children with the Olsons without finding by clear and convincing evidence that returning the children to her custody would harm them.

The Georgia court found that Lopez was financially unable to care for the children and that she failed to prove by clear and convincing evidence that returning custody of the children to her would be in the best interest of the children. The Olsons contend that the trial court correctly required Lopez to bear this burden of proof because this case is controlled by the standard set forth in *Durden v. Barron*, 249 Ga. 686 (290 SE2d 923) (1982), which provides:

> Once a third party has been awarded permanent custody of a child in a court proceeding to which a parent was a party, the roles of the parent and the third party reverse; that is, the third party now has the prima facie right to custody as against the parent who has lost the right to custody. The parent can regain custody upon showing by clear and convincing evidence his or her present fitness as a parent and that it is in the best interest of the child that custody be changed.

The *Durden* standard applies where there has been a permanent award of custody to the third party made pursuant to an evidentiary hearing with specific findings by clear and convincing evidence of present parental unfitness. *Parton v. Haviland*, 212 Ga. App. 835, 837 (442 SE2d 806) (1994). Even assuming the Alaska court order could be construed on its face as awarding permanent custody of the children to the Olsons, there was no evidentiary hearing and no finding by the court that Lopez was an unfit parent, nor does it appear that "such a finding was waived by the parties while represented by counsel." *Villenueve v. Richbourg*, 217 Ga. App. 354, 355 (457 SE2d 821) (1995). The record shows that Lopez and her parents, the Olsons, entered into a written agreement for the Olsons to take legal and primary physical custody of her children. The agreement provided that Lopez and the Olsons would "work together in rearing the children" and jointly participate in making medical decisions. It required no child support from Lopez and gave Lopez visitation with the children "any time she is off work." According to Mr. Olson, the intent of the agreement was that he and his wife would retain custody of the children until Lopez became financially stable enough to resume her parenting duties. The Alaska court found the agreement was voluntary and adopted its provisions

as the order of the court giving legal and primary physical custody of the children to the Olsons. The Alaska court subsequently entered an interim order granting joint legal custody of the children to Lopez and the Olsons with temporary placement of the children with the Olsons. Under these circumstances, we find that the standard set forth in *Durden*, supra, placing the burden of proof on the parent to prove present fitness and the best interest of the child does not apply. Because Lopez has not lost all parental power or been found unfit, we conclude that this case is properly considered as a custody dispute between custodial third parties and a noncustodial parent seeking reunification with her children, and is governed by the standard set forth in OCGA § 19-7-1 (b.1) relating to custody disputes between a parent and certain relatives of the child, including grandparents. Accordingly, we find that the appropriate standard of proof is the "best interest of the child" standard set forth in OCGA § 19-7-1 (b.1) as narrowly construed in *Clark v. Wade*, 273 Ga. 587 (544 SE2d 99) (2001) to recognize parents' constitutionally protected interest in the care, custody, and management of their children.

We find instructive the application of this standard in *Boddie v. Daniels*, 288 Ga. 143, 145 (702 SE2d 172) (2010). In *Boddie*, the custody dispute was between a noncustodial biological parent and a third party who held a prior court-awarded temporary guardianship of the child with the consent of the biological parent. Id. at 143-146. At issue was whether a continuation or termination of the guardianship was controlled by the "best interest of the minor" standard set forth in OCGA § 29-2-8 (b). Id. at 143, 146. After recounting the similarities between custody and guardianship, and noting that "the right to custody of the child is certainly the principal attribute of guardianship of the person," *Boddie* held that

> [c]onsistent with the common attributes of custody and guardianship, those courts which apply certain principles and safeguards in the context of custody disputes between a biological parent and a third party due to constitutional concerns apply those same principles and safeguards to a parent's effort to regain custody by terminating a guardianship.

Id. at 144-145. Accordingly, *Boddie* found that the narrow construction placed on the "best interest" standard in *Clark*, supra, controlled the dispute between the guardian of the child and the noncustodial parent. *Boddie*, 288 Ga. at 145. As set forth in *Boddie*,

> where, as here, a custody dispute arises between a noncustodial biological parent and a third party, a strong majority of

Justices in *Clark* would not permit the state to interfere with the parent's right to raise her child unless, at a minimum, the state acts to protect the child's health or welfare and the parent's decision would result in harm to the child.

(Citations and punctuation omitted.) *Boddie*, 288 Ga. at 145. *Boddie* held that under *Clark* the "best interest" standard must be narrowly interpreted to mean

that the third party must prove by clear and convincing evidence that the child will suffer physical or emotional harm if custody were awarded to the biological parent by terminating the temporary guardianship. Once this showing is made, the third party must then show that continuation of the temporary guardianship will best promote the child's welfare and happiness.

(Citation and punctuation omitted.) *Boddie*, 288 Ga. at 146. *Boddie* reiterated the *Clark* holding that "[b]y harm, we mean either physical harm or significant, long-term emotional harm; we do not mean merely social or economic disadvantages." (Citation and punctuation omitted.) Id. at 146. Moreover, *Boddie* held that "[i]n applying this rigorous harm standard so as to ensure that the temporary guardianship will be continued only when a real threat of harm would result from termination, the trial court must consider the factors set forth in *Clark v. Wade*, supra at 598-599" encompassing the child's own needs. Id. at 146. Accordingly, *Boddie* concluded that the trial court erred by denying the parent's request to terminate the guardianship "without finding by clear and convincing evidence that such termination would harm the child." *Boddie*, 288 Ga. at 146.

Similarly, we find that the Olsons had the burden of proof to show by clear and convincing evidence that, if the children were returned to Lopez's custody, they would suffer harm — defined to mean "either physical harm or significant, long-term emotional harm," not "merely social or economic disadvantages." *Clark*, 273 Ga. at 598; *Boddie*, 288 Ga. at 146. Moreover, in applying this harm standard to ensure that custody is continued in the Olsons only when a real threat of harm would result from returning custody to Lopez, the trial court must consider the factors set forth in *Clark* which "encompass the child's own needs" and include

(1) who are the past and present caretakers of the child; (2) with whom has the child formed psychological bonds and how strong are those bonds; (3) have the competing parties

evidenced interest in, and contact with, the child over time; and (4) does the child have unique medical or psychological needs that one party is better able to meet.

*Clark*, 273 Ga. at 598-599; *Boddie*, 288 Ga. at 146. Finally, once a showing of harm is made, the Olsons must then show that continuing custody of the children in them will best promote the children's welfare and happiness. *Clark*, 273 Ga. at 599; *Boddie*, 288 Ga. at 146.

Because the trial court did not apply the correct standard of proof to the custody dispute, we vacate the court's judgment with respect to custody of the children and remand the case to the court for reconsideration consistent with this opinion.

*Judgment affirmed in part and vacated in part, and case remanded. Phipps, P. J., and McFadden, J., concur.*

DECIDED MARCH 2, 2012.

*Anthony M. Zezima*, for appellant.
*Mirshak & Smith, Timothy S. Mirshak, Lisa L. Clarke*, for appellees.