# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 25, 2012 Session

## STEPHEN G. BUTLER v. MICHELE G. BUTLER

**Appeal from the Circuit Court for Montgomery County**
**No. MC-CC-CV-OR-09-0760     Ross H. Hicks, Judge**

---

**No. M2011-01341-COA-R3-CV - Filed October 5, 2012**

---

The parents of a three year old girl were divorced by order of a Georgia court, and their settlement agreement was incorporated into the divorce degree. The parties subsequently moved to this state, and after several years Father petitioned the Tennessee court to name him as the child's primary residential parent. He also asked the court to modify his child support. After a hearing, the trial court declared that Mother would remain the child's primary residential parent, and it granted Father additional visitation. The court also found that Father was not entitled by law to a reduction in his child support obligation, but it adopted Mother's proposal that the obligation be reduced by about one fourth. On appeal, Father contends that the trial court erred by failing to apply the Tennessee child support guidelines to determine his support obligation. We vacate the child support order and remand for setting Father's support using the Child Support Guidelines. Despite concerns expressed by Father, we find the trial court had subject matter jurisdiction.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part, Affirmed in Part

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Helen Sfikas Rogers, Lawrence James Kamm, Nashville, Tennessee, for the appellant, Stephen G. Butler.

Roger Alan Maness, Clarksville, Tennessee, for the appellee, Michele G. Butler.

## OPINION

### I. MARRIAGE AND DIVORCE

Stephen G. Butler ("Father") and Michele G. Butler ("Mother") married on May 28, 1994. Their one child, a daughter named Lillian ("Lily") was born on July 13, 2002, when the couple was living in Georgia. In 2005, Mother began divorce proceedings in Georgia. The parties entered into a settlement agreement which the trial court incorporated into the final decree of divorce. Under the terms of the agreement, Mother was awarded sole legal and physical custody of the parties' child, with a provision for visitation by Father one weekday each week at a time agreed on by both parties, and every Saturday and Sunday "for a reasonable period of time."

The agreement recited that Father had a gross monthly income of $12,750 for purposes of child support and that Mother did not have any income. The agreement further stated that the application of the existing Georgia child support guidelines to Father's income would normally entitle Mother to child support in an amount between $2,006 and $2,714 per month. The parties agreed, however, that in light of Father's unusually high income and Mother's lack of any income, Father would instead pay $5,700 per month.[1] He also agreed to pay for the child's medical insurance, for a vehicle when she turned 16, for her college education, and for the continuation of child support until she graduated from college. There was no provision for alimony in the agreement.

Shortly after the divorce, Mother decided to move to Clarksville, Tennessee, where her parents and other family members lived. She began working part-time for her brother, a Clarksville dentist. In order to be closer to his child, Father accepted a new job in Nashville even though he had to take a pay cut, and he also purchased a home there. By the time of the hearing of this case, Father had changed jobs again, and his income had increased above the level he had enjoyed at the time of the Georgia order. Father also married again, and he and his wife had another daughter in September of 2010.

### II. PROCEEDINGS IN THE TENNESSEE COURT

On April 24, 2009, Father filed a petition in the Circuit Court of Montgomery County

---

[1]The Georgia child support guidelines were set out in the agreement. They provided for payment by an obligor of between 17 and 23 percent of his gross income for the support of one child. However, the court was allowed to deviate from those percentages if there were "extreme economic circumstances." Such circumstances included extremely high income of either party, defined as individual gross income of over $75,000 per annum.

for modification of custody. Father attached a copy of the final decree of the Georgia court as an exhibit to his petition. The petition alleged that Mother refused to allow Father to have unsupervised visitation with his daughter and that her refusal constituted a material change of circumstances. Father asked the Tennessee court to name him as the child's primary residential parent, to review the question of child support, and to set support according to the current Tennessee Income Shares Guidelines.[2]

At the hearing on the petition, the attorneys for both parties referred to the Georgia decree in their opening arguments. Signed and certified copies of the decree and the incorporated settlement agreement were admitted into evidence. Father identified those documents and was questioned about their content by the attorneys for both parties. There was no challenge to their authenticity.

The proof showed that both parties were originally from Tennessee. Father's parents still live in Nashville as does his brother and his brother's family. Mother's entire family lives in the Clarksville area, including her parents and her siblings, along with their respective families. Father pursued a career in telecommunications, and he was employed at a number of high pressure jobs that required long hours and frequent travel, but which paid handsomely. Mother worked for several years after graduation, but she stopped working outside the home in the year 2000. After the birth of their child, the parties agreed that Mother should remain a stay-at-home mom and that Father would focus on the demands of his career.

There arose several points of contention between the parties after their separation and divorce. Their differing approaches to parenting led to disagreements between the parties. Father testified that Mother attempted to limit or restrict his time with Lillian as much as possible. He also complained that even when he was able to spend time with Lily, Mother had a tendency to hover nearby and even to swoop in unexpectedly. Father testified to other limitations that Mother placed on his contact with Lily.

For her part, Mother testified that Father refused to communicate directly with her and that he would respond to her attempts to tell him things by reciting his preferred channels: "e-mail, text or lawyers."

---

[2]Although Father asked in his petition to be named as the child's primary residential parent, he submitted a proposed parenting plan to the court that designated Mother as the primary residential parent and increased his own parenting time to 145 days each year. Mother's proposed parenting plan included only 90 days of parenting time annually for Father.

The parties both testified that Lily was an intelligent girl who was growing up nicely and doing well in school. But, the proof also showed that Lily had been in the care of a psychiatrist for about a year, who had diagnosed the child with Obsessive Compulsive Disorder (OCD), an anxiety disorder. The psychiatrist testified that her communication with Mother about Lily's problem was excellent and that she had never met Father, but that in her opinion it would be to the child's advantage if Father was involved in the child's therapy as well.

In its order filed May 20, 2011, the court discussed the Georgia divorce decree and settlement agreement and stated that "there had been no unanticipated material change in the economic circumstances of the parties from the time of the entry of the Georgia decree." The court nonetheless discussed some of the changes which had occurred. These were the birth of Father's second child and an increase of between $80,000 and $90,000 in his annual income. The court declared that those two changes essentially cancelled each other out and, thus, that Father was not entitled to a reduction in his child support obligation as a matter of law. However, Mother proposed that Father's child support be reduced to $4,200 per month, and the court adopted her proposal.

The court also declared that Mother had been overprotective of Lily and that she had unjustly deprived Father of overnight visitation, but that she should nonetheless remain the child's primary residential parent. The court created a parenting plan that gave Father less parenting time than he proposed, but more than Mother proposed that he have, and it gave both parties joint responsibility for major decisions regarding the child, including educational decisions. Both parties were also ordered to attend parenting classes within the next six months and to participate in Lily's treatment to the extent requested by her psychiatrist.

Mother filed a motion to alter or amend the trial court's judgment on April 5, 2011, asking, among other things, that the court restore her sole responsibility for major decisions regarding the child, including educational decisions. Father filed a motion on April 7, 2011 to compel mediation on the issue of the child's schooling. The trial denied Mother's motion in regard to joint parenting decisions. In lieu of granting Father's motion to compel mediation, the court appointed a parenting coordinator, Nancy P. Wilkinson, "in order to better facilitate communication between the parties." Father filed an appeal to this court.

### III. THE JURISDICTION OF THE TENNESSEE COURT

In this appeal, Father has raised concerns about the jurisdiction of the trial court in this matter. We must, necessarily, begin with that issue.

The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and the

Uniform Interstate Family Support Act (UIFSA) are detailed jurisdictional Acts that have been adopted, in one form or another, in all fifty states. *Staats v. McKinnon,* 206 S.W.3d 532, 545 (Tenn. Ct. App. 2006) (UCCJEA); *LeTellier v. LeTellier*, 40 S.W.3d 490, 497 (Tenn. 2001) (UIFSA). They were designed to establish uniform national standards for the initial entry, enforcement, and modification of child custody and support orders and to eliminate those difficult situations where, after one or more parties to a domestic dispute have moved from one state to another, the courts of the different states claim the authority to issue contradictory orders. *Staats v. McKinnon,* 206 S.W.3d at 544. Both acts are relevant to the case before us since issues of both custody and support were heard in the court below and since the initial order was from another state.

## A. Jurisdiction to Modify a Foreign Custody Order

Tennessee's version of the UCCJEA is found at Tenn. Code Ann. § 36-6-201 et seq. Tennessee Code Annotated § 36-6-218 establishes the jurisdictional requirements for a Tennessee court's subject matter jurisdiction to modify another state's custody determination. The first requirement is that the Tennessee court has the jurisdiction, as defined in Tenn. Code Ann. § 36-6-216(a)(1) and (2), to make an initial determination of custody. Tenn. Code Ann. § 36-6-218. A Tennessee court has jurisdiction to make an initial custody determination if Tennessee is the home state of the child. The parties do not dispute that Tennessee had become Lily's home state.

The second, and additional, requirement is that, *inter alia*, "[a] court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state." Tenn. Code Ann. § 36-6-218(2). It is undisputed that when Father filed his petition, both parents and their child were no longer living in Georgia and that they had been living in Tennessee for several years. Therefore, under the language of the UCCJEA, the trial court clearly had subject matter jurisdiction to consider a modification. Tenn. Code Ann. § 36-6-218. No question was raised in the trial court concerning its jurisdiction or the validity of the Georgia order.

However, in this appeal, Father has challenged the jurisdiction of the trial court and, consequently, the validity of its judgment. His concern is based upon the statutory procedural requirements regarding registration of foreign custody and support orders. Tennessee Code Annotated § 36-6-229 of the UCCJEA sets out detailed procedures for **registering** a foreign child custody decree in a Tennessee court. Those requirements are essentially designed to ensure that the other party be given notice of the registration and the

opportunity to contest the continued validity of the foreign order.[3]

However, the procedural prerequisites for registering and enforcing a foreign custody order have no effect on the jurisdiction of the Tennessee court to modify the foreign order. There are several reasons for this conclusion. First, the statute setting forth the procedure specifically, by its own terms, makes the procedure applicable only to registration and enforcement of the foreign order. Tenn. Code Ann. § 36-6-229 ("A child-custody determination issued by a court of another state may be registered in this state, with or without a simultaneous request for enforcement, by . . . ." Those procedural requirements set out in Tenn. Code Ann. § 36-6-229 simply do not apply to requests to modify a foreign custody order.

"Registration" under the UCCJEA is a unique procedure and is not the same as "domestication." A foreign custody order that is registered, for purposes of immediate or future enforcement, remains the order of the foreign court. As the Official Comments[4] state,

> A registered child-custody determination can be enforced as if it was a child-custody determination of this state. However, it remains a custody determination of the state that issued it.

Tenn. Code Ann. §36-6-230, cmt.

The Tennessee court is simply asked to register the order, giving parties an opportunity to contest its reliability and accuracy, so that the foreign order can be enforced against a parent over whom the Tennessee court has jurisdiction. For example, if a parent has moved to Tennessee, but the child and the other parent have remained in the state where the order originated (say, Georgia), then the foreign court retains continuing exclusive jurisdiction. But, the parent can enforce the Georgia order against the parent now residing in Tennessee through the registration and enforcement provisions of the UCCJEA. This procedure furthers the purpose of the UCCJEA to "facilitate the enforcement of custody

---

[3]Parties seeking registration of a foreign decree are directed to send the court a letter explaining that intention; two copies of the document sought to be registered, one of which one must be certified; "a statement under penalty of perjury that to the best of the knowledge and belief of the person seeking registration that the order has not been modified;" and the names and addresses of all relevant parties. Tenn. Code Ann. § 36-6-229(a). The court must then serve notice to those parties, and give them the opportunity to contest the registration. Tenn. Code Ann. § 36-6-229(b), (c) and (d).

[4]Tennessee Code Annotated §§ 36-3-203 and -204 provide that the official comments to the Uniform Child Custody Jurisdiction and Enforcement Act be included in Tennessee Code Annotated and that they "shall constitute evidence of the purposes and policies underlying such sections. . . ."

decrees of other states." Tenn. Code Ann. §36-6-202(6).

Registration and enforcement of a foreign order of custody does not require that a Tennessee court have obtained jurisdiction over the case; however, modification does. The distinction is made clear in the following:

> (a) A court of this state may grant any relief normally available under the law of this state to enforce a registered child-custody determination made by a court of another state.

> (b) A court of this state shall recognize and enforce, but may not modify, except in accordance with this part, a registered child-custody determination of a court of another state.

Tenn. Code Ann. 36-6-230.

As set out earlier, the statute on modification of a foreign custody order, Tenn. Code Ann. § 36-6-218, requires that the Tennessee court must have obtained jurisdiction over the matter pursuant to the UCCJEA. Thus, the bar for modification is much higher than that for mere registration.

Courts in other states that have adopted the UCCJEA have reached the same conclusion regarding the procedural requirements for registration and their relevance in a modification proceeding. In *Lopez v. Olson*, 724 S.E.2d 837 (Ga. Ct. App. 2012), the appellate court held that the procedural requirements for registration do not apply to petitions for modification and, further, that under the plain language of the statutes, "the UCCJEA does not require that a custody determination of another state be registered before it may be modified." *Id*. at 841. Therefore, challenges to the jurisdiction of the Georgia court to modify another state's custody order on the basis of failure to comply with the procedural requirements for registration were without merit. *Id*.

The same reading of the statutes was applied in *Davis v. Blackstock*, 82 So.3d 695 (Ala. Ct. App. 2011), stating:

> By its plain terms, the registration requirements established in § 30–3B–305 apply solely to enforcement, not modification, actions. Subject-matter jurisdiction to modify a foreign child-custody determination is instead governed by § 30–3B–203, Ala.Code 1975, which does not condition modification jurisdiction on registration of the prior foreign child-custody determination. In short, under § 30–3B–203, an Alabama trial court may

modify a foreign child-custody determination without the judgment containing that determination first being registered in accordance with § 30–3B–305. Therefore, the Alabama trial court did not lack subject-matter jurisdiction to modify the custody of the child based on the alleged failure of the mother to register the Tennessee judgment containing a child-custody determination.

*Id.* at 701. The statutes cited by the Alabama court are the same as the Tennessee statutes on registration and modification under the UCCJEA.

Finally, this court has described the failure to comply with the statutory steps for registration of foreign custody orders under the UCCJEA (as well as those under the UIFSA) as "technical filing deficiencies" and has specifically held that such procedural shortcomings do not deprive a court of subject matter jurisdiction. *Summers v. Ryan*, E2006-01757-COA-R10-JV, 2007 WL 161037, *3 (Tenn. Ct. App. Jan. 23, 2007)(Tenn. R. App. P. 11 perm. app. denied May 21, 2007). In *Cliburn v. Bergeron*, 2002 WL 31890868, at *15 (Tenn. Ct. App. December 31, 2002) the mother alleged that father had not complied with the filing requirements under the UCCJEA, and this court held "The issues raised in this appeal are not addressed to jurisdictional deficiencies. Instead, Mother alleges that Father's petition failed to meet certain procedural requirements."

Accordingly, we conclude that the procedural prerequisites for registration and enforcement of a foreign custody order do not apply to a petition for modification of such an order. Additionally, failure to comply precisely with the procedural requirements does not call into question the Tennessee court's subject matter jurisdiction to hear a request to modify a custody order issued by another state.

Tennessee Code Annotated § 36-6-202 declares that the UCCJEA "shall be liberally construed and applied to promote its underlying purposes and policies."[5] The purpose for

---

[5]The purposes set out in Tenn. Code Ann. § 36-6-202 are to:

(1) Avoid jurisdictional competition and conflicts with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
(2) Promote cooperation with the courts of other states to the end that a child custody decree is rendered in that state which can best decide the case in the interest of the child;
(3) Discourage the use of the interstate system for continuing controversies over child custody;
(4) Deter abductions of children;
(5) Avoid relitigation of custody decisions of other states in this state; and

(continued...)

-8-

the registration requirements is to provide notice and the opportunity to challenge the validity of the foreign order. Those purposes were accomplished in this case. Father's petition asked the court to modify the Georgia decree, not to register it. Neither Father nor Mother ever suggested that the validity of the Georgia decree was at issue or that there was any ambiguity in its meaning. To the contrary, both parties filed motions that specifically referred to the Georgia decree without questioning its validity. Neither party contested the trial court's jurisdiction.

We hold that the procedural requirements for registration of a foreign custody order do not apply to petitions for modification of such an order. Additionally, such procedural technicalities do not affect the subject matter jurisdiction of a court. The trial court herein had subject matter to modify the Georgia custody order.

Neither party challenges on appeal the substance of the trial court's decision on the parenting plan.

## B. Jurisdiction to Modify Foreign Support Order

Father asked the court to modify not only the custody order, but also the child support order issued by the Georgia Court. The UCCJEA is not applicable to support orders, so we must consult the provisions of the UIFSA to determine whether the trial court, as Father suggests, lacked subject matter jurisdiction because Father did not follow the procedural requirements of the statute for registration of a foreign support order. Tennessee Code Annotated § 36-5-2601 of the UIFSA sets out procedures for registering a support order or withholding order of another state that are virtually identical to those applicable to registration of a custody order.

As discussed above, statutes on modification of a foreign custody order do not require registration of that order. However, the same is not true for modification of a foreign support order. Tennessee Code Annotated § 36-5-2609 provides:

> A party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another state shall register that order in this state in the same manner as provided in subpart A [the registration and enforcement provisions in Tenn. Code Ann. §36-5-2601-2604] if the order has

---

[5](...continued)
(6) Facilitate the enforcement of custody decrees of other states.

not been registered.[6]

There is no dispute that Father's petition did not comply with all the technical requirements in the registration statutes. However, we do not find that fatal to the jurisdiction of the court herein. Father's filings put Mother on notice and gave her the opportunity to contest the validity of the Georgia support order. She did not contest it and, in fact, agreed to its modification. The purposes of the registration procedural requirements were met, and no one challenged the trial court's authority to make the modification.

In any event, any shortcomings in the procedural requirements do not affect the jurisdiction of the court. As a general rule, failure to follow procedural requirements, even those created by statute, does not implicate the court's jurisdiction. This rule applies to the registration requirements for registration of foreign support orders under the UIFSA. *Summers v. Ryan*, 2007 WL 161037, at *3 (referring to those requirements as "technical filing deficiencies" and holding that such procedural shortcomings do not deprive a court of subject matter jurisdiction); *Kendall v. Kendall*, 340 S.W.3d 483, 500-01 (Tex. Ct. App. 2011).

In *Kendall*, the Texas Court of Appeals found that a number of states had reached the same holding, *i.e.*, rejecting the argument that technical procedural UIFSA registration requirements are jurisdictional. Among the cases discussed are *In re Marriage of Owen and Phillips*, 108 P.3d 824, 829 (Wash. Ct. App. 2005) ) (rejecting the argument that the petitioner's "failure to properly register deprives the court of subject matter jurisdiction," and noting that the respondent "received notice of registration and had ample opportunity to answer" and, therefore "suffered no prejudice from the error.") The Washington court explained that its decision "furthers the statutory policy":

> Public policy supports our determination that substantial compliance is the appropriate standard where there is no prejudice to the obligor. UIFSA encourages parties to register valid child support orders, and the procedural safeguards are designed to minimize the risk of prejudice to the obligor. UIFSA does not support a policy that punishes support recipients for minor, harmless procedural errors in registration.

*Id. See also Nelson v. Halley*, 827 So.2d 42, 45–46 (Miss. Ct. App. 2002) (en banc) (holding that the father, who on appeal raised the jurisdiction question, had filed the first petition to

---

[6]Under the UIFSA, the registered order does not become the order of the registering court. Instead, there remains only one order in existence at any time. The registered order may be enforced regardless of whether it could be modified. Tenn. Code Ann. § 36-5-2603 cmt.

modify the support order and, while some statutorily required information was missing, the foreign judgment "had adequately been filed."); *State v. Hill*, No. A05–781, 2006 WL 1229137, at *5 (Minn. Ct. App. May 4, 2006) (holding that father "waived any objection to this procedural defect by not raising it").

We agree with the reasoning and conclusion of the other states who have held that failure to comply with every technical requirement for registration of a foreign support order does not deprive the Tennessee court of subject matter jurisdiction to modify such an order. We also agree that shortcomings in the registration requirement, since they are not jurisdictional, can be waived. Father initiated the proceedings below, and has waived any objection to his failure to meet the technical procedural requirements for registering the Georgia support order.

The relevant provisions of the URISA provide that the Tennessee court can enforce a registered child support order from another state in the same manner as if the order had been issued by a Tennessee court. Tenn. Code Ann. § 36-5-2610. However, a foreign support order can be modified only if the requirements of Tenn. Code Ann. § 36-5-2611, and through that statute, Tenn. Code Ann. § 36-5-2611 have been met. Tennessee Code Annotated § 36-5-2611 provides:

> (a) If all of the parties who are individuals reside in this state and the child does not reside in the issuing state, a tribunal of this state has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order.

> (b) A tribunal of this state exercising jurisdiction under this section shall apply the provisions of parts 21 and 22 of this chapter, this part, and the procedural and substantive law of this state to the proceeding for enforcement or modification. Parts 23, 24, 25, 27, and 28 of this chapter do not apply.

This section is designed to make it clear that when the issuing state no longer has continuing, exclusive jurisdiction and the obligor and obligee reside in the same state, a tribunal of that state has jurisdiction to modify the child support order and assume continuing, exclusive jurisdiction. Although the individual parties must reside in the forum state, there is no requirement that the child must also reside in the forum state (although the child must have moved from the issuing state). Tenn. Code Ann. § 36-5-2611, cmt.

Based upon the relevant statute and the undisputed facts in the record, it is clear to us that the trial court herein had jurisdiction to modify the Georgia support order.

## V. CHILD SUPPORT

Father argues that the trial court erred in its approach to his request for modification of child support. A court with jurisdiction to modify a support order from another state is to apply the substantive and procedural law of its state - here, Tennessee law.

The threshold condition for a change in child support is a significant variance between the amount due under the child support guidelines and the amount of support currently ordered. Tenn. Code Ann. § 36-5-101(g); *Kaplan v. Bugalla*, 188 S.W.3d 632, 636 (Tenn. 2006); *Johnson v. Johnson*, M2008-00236-COA-R3-CV, 2009 WL 890893 at *3-4 (Tenn. Ct. App. Apr. 2, 2009) (Tenn. R. App. P. 11 Perm. App. denied June 17, 2009).

The current child support guidelines set out several different circumstances that would constitute "a significant variance" for purposes of the modification of a child support order. These include,

1. At least a fifteen percent (15%) change in the gross income of the ARP[7] and/or

2. A change in the number of children for whom the ARP is legally responsible and actually supporting.

Tenn. Comp. R. & Regs. 1240-2-4-.05(b).

In the present case, Father did not offer any documentation as to his current income. But when he took the stand, he testified that he earned about $240,000 in 2010, or about $20,000 per month. That amounts to a substantial increase in his income, certainly more that a 15% increase, over the $12,750 per month that is recited in the settlement agreement in the Georgia divorce decree. Father also testified that he is now supporting another child, a daughter. The evidence therefore shows that there were two factual circumstances that established a significance variance. Accordingly, the trial court was required to calculate Father's child support obligation under the current guidelines. The trial court did not engage in that calculation or procedure.

The trial court's reluctance to tamper with the Georgia child support order may have been based upon the order's unusual features, including the fact that the parties had agreed

---

[7]The initials ARP in the guidelines stand for "Alternate Residential Parent." Prior to the adoption, in 1997, of the Parenting Plan statutes, Tenn. Code Ann. § 36-6-401 et seq., that individual would have been most commonly referred to as the "non-custodial parent."

that Father would pay about double the presumptive amount of support under the Georgia child support guidelines. The court stated that it appeared that Father had agreed to the increased amount to make sure that Mother would stay home to raise the child. It also observed that no alimony award was included in the Georgia order and stated that the increased child support was like "money in lieu of alimony," and that the support order was "almost contractual."

Mother agrees with the trial court's emphasis on the contractual nature of her agreement with Father, and cites the Tennessee Supreme Court's endorsement of such agreements:

> Parties may agree in an MDA to a child support obligation that exceeds the amount payable directly to an obligee parent under the Guidelines and to a method of calculating child support that differs from the mechanism contemplated by the Guidelines as long as the resulting child support meets or exceeds the amount mandated under the Guidelines.

*Kesser v. Kesser*, 201 S.W.3d 636, 642 (Tenn. 2006).

Father acknowledges that the parties' settlement agreement amounted to a contract between them, but he relies upon the well-known rule that when parents enter into contract with respect to the legal duty of child support, and the trial court incorporates their contract into a final decree of support, their agreement becomes merged into the decree and loses its contractual nature. *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975) (holding that "[t]he reason for stripping the agreement of the parties of its contractual nature is the continuing statutory power of the Court to modify its terms when changed circumstances justify.")

In *Penland* the court also held that an agreement to furnish support to a child beyond the age of eighteen retains its contractual nature, even when incorporated into a child support order, because such support falls "outside the scope of the legal duty of support during minority." *Penland v. Penland*, 521 S.W.2d at 224-225. *See, also*, *Pylant v. Spivey*, 174 S.W.3d 173 (Tenn. Ct. App. 2003); *Hathaway v. Hathaway*, 98 S.W.3d 675, 678 (Tenn. Ct. App 2002); *Bryan v. Leach*, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001); *Hawkins v. Hawkins*, 797 S.W.2d 897, 898 (Tenn. Ct. App. 1990).

Applying *Penland* to situations that did not involve post-majority support has not necessarily resulted in a uniform approach. However, any question as to the application of the *Penland* rule to agreements for support during the child's minority was answered in *Kesser v. Kesser*, 201 S.W.3d 636.

As in the case before us, the parties in *Kesser* entered into an MDA whereby the father agreed to pay child support well in excess of the guideline amounts. After the father experienced some business reversals and an unexpected windfall, the parties filed competing petitions in regard to the father's child support obligations. Our Supreme Court addressed the parties' arguments and reaffirmed the principle that "any agreement between the parents regarding the payment of child support of a minor child is within the legal obligation to support the minor child and, therefore, is subject to court modification once the agreement is merged into a divorce decree." *Kesser v. Kesser,* 201 S.W.3d at 643.

The Supreme Court concluded that if an obligor spouse agrees to provide more child support than is required under the Guidelines, the obligor "does not pay support that is 'outside' the Guidelines" such that it is not subject to modification. "To the contrary, the additional amount of child support paid by the obligor continues to be 'with respect to,' 'dealing with,' or within 'the scope of' the legal duty to support his children during minority." *Kesser v. Kesser,* 201 S.W.3d at 643 (citing *Penland v. Penland,* 521 S.W.2d at 224-25). *See, also, Wade v. Wade*, 115 S.W.3d 917, 921 n. 2 (Tenn. Ct. App. 2002)). And because any such agreement is within the legal obligation to support the minor child, it is therefore subject to court modification once the agreement is merged into a divorce decree.

Therefore, despite its contractual or "almost contractual" nature, the Georgia child support order is subject to modification pursuant to the requirements of Tennessee law. Here, the trial court should have considered the appropriate child support for Father under the guidelines and considering all the circumstances.

Accordingly, we vacate the child support portion of the final order and remand this case to the trial court for further proceedings to determine the appropriate child support in accordance with the requirements of the Tennessee Child Support Guidelines.

## VI. THE PARENTING COORDINATOR

Finally, Father argues that the trial court exceeded its authority by appointing a parenting coordinator without obtaining the consent of the parties. Mother does not take a position, one way or the other, on the question of the parenting coordinator. The trial court in the present case appointed the parenting coordinator *sua sponte* in response to Father's post-trial motion to compel mediation. There is no indication in the record that either party agreed to the appointment prior to its inclusion in the trial court's order. In its Order on Motion to Alter or Amend Judgment, the trial court stated that in lieu of amending the parenting plan regarding joint responsibility for parenting decisions and in lieu of granting Father's motion to compel arbitration, and "in order to better facilitate communications between the parties, . . . is hereby appointed parenting coordinator in this civil matter."

There is no statutory authority for the appointment of a parenting coordinator and, therefore, no description of such a coordinator's duties and authority. This court has expressed its concerns regarding use of "parenting coordinators" where there is no uniform definition of that term, where the express assigned duties involve unauthorized delegation of judicial authority, or where the parties have not expressly agreed to the appointment.

Because nothing in the order describes the scope of the coordinator's duties or other specifics, and in the absence of agreement to the appointment or its scope, we vacate the appointment of the "parenting coordinator."

## VII.

We affirm the trial court's parenting plan, but vacate its modification of the Georgia Court's child support order and its order appointing a parenting coordinator. We remand this

case to the Circuit Court of Montgomery County for proceedings necessary to the setting of child support under the current guidelines. Tax the costs on appeal equally between the appellant and the appellee.

_____
PATRICIA J. COTTRELL, JUDGE