**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 4, 2019**

# In the Court of Appeals of Georgia

A19A1103. IN THE INTEREST OF J. L.

McFADDEN, Chief Judge.

On February 12, 2016, the Probate Court of Chatham County appointed the uncle of the mother of minor child J. L. to be the temporary guardian of the child. On April 27, 2017, the mother filed a petition to terminate the uncle's temporary guardianship. The uncle filed an objection to termination of the temporary guardianship, and the probate court referred the matter to mediation. After the matter was not resolved by mediation, the probate court transferred the case to the Juvenile Court of Chatham County. The juvenile court held two evidentiary hearings, after which, on June 29, 2018, it entered a final order denying the petition to terminate the temporary guardianship.

The mother appeals, challenging the sufficiency of the evidence supporting the juvenile court's final order. Because there is sufficient evidence from which a rational trier of fact could find by clear and convincing evidence that the temporary guardianship should not be terminated, we affirm.

1. *Facts.*

On appeal, we view the evidence in the light most favorable to the juvenile court's decision. *Holdaway v. Holdaway*, 338 Ga. App. 477 (789 SE2d 817) (2016); *In the Interest of S. P.*, 336 Ga. App. 488, 489 (1) (784 SE2d 846) (2016); *Whitehead v. Myers (In the Interest of D. W.)*, 311 Ga. App. 680 (716 SE2d 785) (2011).

So viewed, the evidence shows that J. L. was born on April 26, 2014. When J. L. was approximately nine months old, the mother became homeless and gave J. L. to her grandfather to care for him. About two weeks later, the grandfather and mother asked the mother's aunt and uncle to take the child. They agreed to take care of J. L. until his mother could find stable employment and housing.

J. L. has lived with the aunt and uncle since he was ten months old. The aunt and uncle have taken care of all the child's needs during that time. When the aunt and uncle are at work, J. L. is in day care, but otherwise he is with them as part of their

family. J. L. has done well in their care, is thriving and happy, and has developed a very strong bond with them.

The mother has visited J. L. sporadically, seeing him only three or four times per year. After the first hearing in the case, the mother began visiting him once a month but failed to participate in other offered visits by the aunt and uncle, and during one of the visits he told his mother that he was ready to be back with the aunt and uncle because he missed them. She has provided little financial support for J. L., contributing approximately $600 in 2016, but giving no support during other years. The mother has not had steady employment and was unemployed at the time of the first hearing. Two weeks before the second hearing, she began working at a warehouse making $9.00 per hour. The mother admitted that she previously had drug abuse issues, testified that she is on medications for depression and anxiety, and stated that getting therapy for her mental health issues is a requirement for keeping her housing.

2. *Termination of temporary guardianship.*

OCGA § 29-2-8 (b) provides that the juvenile court "shall determine, after notice and hearing, whether a continuation or termination of the temporary

3

guardianship is in the *best interest of the minor*." (Emphasis supplied.) Under this

best interest standard, a temporary guardian who has objected to termination

> must prove by clear and convincing evidence that the child will suffer physical or emotional harm if custody were awarded to the biological parent by terminating the temporary guardianship. Once this showing is made, the [temporary guardian] must then show that continuation of the temporary guardianship will best promote the child's welfare and happiness.

*Boddie v. Daniels*, 288 Ga. 143, 146 (702 SE2d 172) (2010) (citation and punctuation

omitted). Harm in this context means "either physical harm or significant, long-term

emotional harm; it does not mean merely social or economic disadvantages." *In the*

*Interest of K. M.*, 344 Ga. App. 838, 846 (1) (811 SE2d 505) (2018) (citation and

punctuation omitted). In determining harm, the juvenile court "must consider the

factors set forth in *Clark v. Wade*, [273 Ga. 587,] 598-599 (IV) [(544 SE2d 99)

(2001)]." *Boddie*, supra. Those factors include:

> (1) who are the past and present caretakers of the child; (2) with whom has the child formed psychological bonds and how strong are those bonds; (3) have the competing parties evidenced interest in, and contact with, the child over time; and (4) does the child have unique medical or psychological needs that one party is better able to meet.

*Clark*, supra (citations omitted).

4

In this case, the juvenile court properly considered the four factors in determining that the temporary guardian had shown clear and convincing evidence of harm. The court found that the child does not have unique medical or psychological needs, but that the undisputed evidence shows that the temporary guardian and his wife have been the caretakers of J. L. for the vast majority of his life, whereas the mother has not been a caretaker since she gave up the child; that J. L. had clearly formed a psychological bond with the aunt and uncle, calling them "mommy" and "daddy," while referring to the mother by her first name; and that the aunt and uncle had evidenced interest in the child through their ongoing care for him, but the mother had only visited him sporadically and had made no meaningful attempt to maintain contact with him for a significant period of time. The juvenile court further found that the mother had emotionally, physically, and financially neglected J. L. for the vast majority of his life. And given that J. L. has bonded with, and thrived in the care of, the temporary guardian, the court concluded that continuation of the temporary guardianship will best promote the child's welfare and happiness.

Given the evidence recounted above and in the juvenile court's final order, we find sufficient evidence to support the court's denial of the petition to terminate the temporary guardianship. See *Strickland v. Strickland*, 298 Ga. 630, 633-635 (1) (783

5

SE2d 606) (2016) (in considering the sufficiency of the evidence after a bench trial, the appellate court must give due deference to the trial court, acknowledging that it had the opportunity to judge the credibility of witnesses).

*Judgment affirmed. McMillian, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*