IN THE

# Arizona Court of Appeals
### Division One

In re the Matter of:

DANA NICOLE PROUTY, *Petitioner/Appellant,*

*v.*

BRADLEY HUGHES, *Respondent/Appellee.*

In re the Matter of:

DANA NICOLE PROUTY, *Petitioner/Appellant,*

*v.*

ADAM TIMOTHY KAFKA, *Respondent/Appellee.*

Nos. 1 CA-CV 16-0397 FC
1 CA-CV 16-0402 FC
(Consolidated)
FILED 12-11-2018

Appeal from the Superior Court in Maricopa County
Nos. FC2012-053300
FC2012-094898
The Honorable Jay M. Polk, Judge

**AFFIRMED**

COUNSEL

The Nathanson Law Firm, Scottsdale
By Philip J. Nathanson
*Counsel for Petitioner/Appellant*

Bishop Law Office, P.C., Phoenix
By Daniel P. Beeks
*Counsel for Respondents/Appellees*

---

**OPINION**

---

Judge Maria Elena Cruz delivered the opinion of the Court, in which Presiding Judge Michael J. Brown and Judge Maurice Portley[1] joined.

---

**C R U Z**, Judge:

**¶1** Dana Nicole Prouty ("Mother") appeals final orders relating to child custody, legal decision-making authority, child support, and attorney fees. We address in this opinion whether the superior court had jurisdiction to modify a foreign child custody order concerning her daughter. Because our resolution of only this issue merits publication, we have addressed Mother's other arguments in a memorandum decision filed concurrently with this opinion. *See* Ariz. R. Sup. Ct. 111(h). For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2** Mother and Adam Timothy Kafka ("Kafka") are the parents of M.P. ("Daughter"), born in Illinois in 2008. When Daughter was two years old, Mother and Kafka entered into a custody agreement in Illinois which awarded Mother sole legal decision-making authority and primary physical custody, and provided Kafka with unspecified parenting time.

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

Soon thereafter, Mother and Daughter moved to Arizona after Mother became romantically involved with Bradley Hughes ("Hughes").

¶3        In December 2012, Kafka, a Nebraska resident, filed the Illinois custody order in Arizona with a petition to modify that order, along with a motion for temporary orders without notice seeking custody of Daughter. Pursuant to the agreement of Prouty, Hughes and Kafka, under Arizona Rule of Family Law Procedure 69, the superior court granted temporary physical custody of Daughter to Hughes, with Mother having supervised parenting time and Kafka having parenting time with Daughter in Arizona once a month.

¶4        In May 2013, Kafka filed a petition to modify the temporary orders. At the modification hearing, the superior court raised possible jurisdictional concerns regarding the Illinois order and requested Kafka to register the foreign order in Arizona pursuant to Arizona Revised Statutes ("A.R.S.") section 25-1055. Kafka filed his affidavit registering the order in August 2013 and the court subsequently issued notice of the registration to the parties. Mother took the children to Illinois without notice the same month.

¶5        The superior court entered several additional temporary orders regarding custody of Daughter and legal decision-making authority. Specifically, in November 2013 the court entered orders for joint legal decision-making authority, but only temporarily, for Daughter to reside exclusively with Kafka. The court also issued a warrant to take physical custody of Daughter.

¶6        When Kafka first attempted to enforce the warrant in Illinois, Mother obtained an emergency restraining order from the Illinois court against Kafka. In support of her petition for a restraining order, Mother alleged that Arizona did not have proper jurisdiction to make orders regarding Daughter because Mother and Daughter only "sporadically and temporarily" resided in Arizona, as their primary residence was Illinois, and the Illinois order was not properly registered in Arizona because Mother had not been personally served.

¶7        Kafka filed an emergency motion for enforcement of the child custody warrant in Arizona and in December 2013 the superior court made findings of fact and conclusions of law affirming the warrant and all prior orders. Of relevance, the court found Mother and Daughter resided in Arizona beginning October 2012 and Mother had made admissions conceding Arizona was Mother's and Daughter's home state. Shortly after,

the parties appeared in Illinois. The Illinois court also found that Arizona was the proper forum and ordered that the Arizona custody warrant was immediately enforceable.

**¶8** Mother urged the superior court to reconsider its December 2013 orders arguing she did not receive notice of the registration because it was not sent to her Illinois address, and, therefore, the Illinois custody order was not properly registered. The superior court found the Illinois order was properly registered pursuant to A.R.S. § 25-1055 and Mother's failure to update her address with the court did not invalidate its registration or enforceability.

**¶9** Four months later, Mother filed a motion to dismiss the Arizona proceedings for lack of jurisdiction. The superior court denied the motion and affirmed its December 2013 findings and orders. In May 2014, Kafka petitioned the superior court to find Mother in contempt for her failure to comply with the court's November 2013 custody warrant, and later filed a supplement documenting attempts by Mother, in Illinois, to serve Kafka with an order of protection, listing Daughter as a protected person. On its own motion, the superior court set a Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA") conference with the Illinois court to further address jurisdictional issues. The Illinois court found, for the purposes of the UCCJEA, that Arizona was the proper forum and that Mother was utilizing Illinois courts merely because she "[did] not agree with the orders of the court in Arizona." The Illinois court vacated its order of protection proceedings.

**¶10** Following a two and a half-day trial in January 2016, the Arizona court granted Kafka's petition to modify legal decision-making authority and parenting time.

**¶11** We have jurisdiction over Mother's timely appeal from these orders pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶12** This court reviews the superior court's jurisdiction to modify a custody order from another state *de novo*. *Danielson v. Evans*, 201 Ariz. 401, 411, ¶ 36 (App. 2001). When Kafka filed his petition to modify the Illinois custody order, he did not register the order in accordance with A.R.S. § 25-1055. Mother contends the superior court, therefore, lacked subject matter jurisdiction to modify the Illinois custody order and, as a result, all subsequent orders by the superior court are void. In support of

4

her argument, Mother relies on this court's opinion in *Glover v. Glover,* 231 Ariz. 1 (App. 2012). We find *Glover* distinguishable.

¶13 In *Glover,* a Massachusetts court ordered the father to pay child support. The parties relocated to Arizona and subsequently entered into an agreement to reduce the father's child support obligation. *Id.* at 2-3, ¶¶ 2-5. On appeal, this court held the superior court lacked jurisdiction to modify the foreign support order because it was never registered in Arizona as required by the Uniform Interstate Family Support Act ("UIFSA"), A.R.S. § 25-1201 to -1342. *Id*. at 7, ¶¶ 21-22.

¶14 The UIFSA applies to child support orders. The UIFSA statutes governing modification of foreign child support orders require such orders to be registered. *See* A.R.S. § 25-1309 (party seeking to modify foreign support order shall register that order); § 25-1310 (Arizona courts may enforce a registered foreign support order, but may modify a registered support order only if certain requirements are met); *see also Glover,* 231 Ariz. at 7, ¶ 21 ("Unless the foreign child support order is registered, the issuing state retains exclusive jurisdiction, which means another state lacks jurisdiction to modify the order unless it is registered and other prerequisites are satisfied.").

¶15 By contrast, the jurisdictional provision at issue here is the UCCJEA, A.R.S. § 25-1033, not the UIFSA. Unlike the UIFSA, the UCCJEA does not require that a foreign *custody* order be registered before it may be modified. *See also* A.R.S. §§ 25-1055, -1056. While A.R.S. § 25-1055(A) provides that "[a] child custody determination issued by a court of another state *may* be registered in this state," it does not require registration. (Emphasis added). Under the UCCJEA, the jurisdictional requirement for modification of a child custody determination is that this state have jurisdiction to make an initial determination and that either of the following be true:

> 1. The court of the other state determines it no longer has exclusive, continuing jurisdiction under § 25-1032 or that a court of this state would be a more convenient forum under § 25-1037.

> 2. A court of this state or a court of the other state determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state.

A.R.S. § 25-1033. *See Ex parte Davis,* 82 So. 3d 695, 701 (Ala. Civ. App. 2011) (holding that under the plain language of a similar Alabama UCCJEA

provision, registration is not required to modify foreign custody order, only to enforce such order), *overruled on other grounds by Ex parte Reynolds*, 209 So. 3d 1122, 1126 (Ala. Civ. App. 2016); *see also Lopez v. Olson*, 724 S.E.2d 837, 841 (Ga. Ct. App. 2012) (holding Georgia's identical version of UCCJEA did not require registration of foreign custody order prior to modification); *Butler v. Butler*, M2011-01341-COA-R3-CV, 2012 WL 4762105, at *4-5 (Tenn. Ct. App. Oct. 5, 2012) (holding that to modify foreign custody order, Tennessee's similar UCCJEA provisions do not require registration of order).

¶16        The reasons for a registration requirement in the UIFSA but not in the UCCJEA are explained in the UIFSA commentary:

> UIFSA and UCCJEA seek a world in which there is but one order at a time for child support and custody and visitation. Both have similar restrictions on the ability of a tribunal to modify the existing order. The major difference between the two acts is that the basic jurisdictional nexus of each is founded on different considerations. UIFSA has its focus on the personal jurisdiction necessary to bind the obligor to payment of a child-support order. UCCJEA places its focus on the factual circumstances of the child, primarily the "home state" of the child; personal jurisdiction to bind a party to the custody decree is not required.

§ 611 (Unif. Law Comm'n 2008). Registration of the Illinois custody order was not required; therefore, the failure to timely register the order did not deprive the Arizona court of jurisdiction.

¶17        Mother also argues other UCCJEA requirements were not met because Arizona did not have jurisdiction under § 25-1033.  As previously stated, *see supra* ¶ 14, § 25-1033 requires jurisdiction to make an initial determination under § 25-1031(A)(1) or (2), and that one of two additional requirements be met.  Here, all of the § 25-1033 jurisdictional requirements were satisfied.  The superior court found that in December 2012, Arizona was Mother's and Daughter's home state and that neither Daughter nor either of the parties resided in Illinois. The record supports these findings.  Therefore, the court did not err in finding it had jurisdiction under A.R.S. § 25-1033 and properly exercised jurisdiction over Father's petition to modify.

## CONCLUSION

¶18      For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA